UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CRIMINAL ACTION No.: 5:19-cv-00068-TBR

UNITED STATES OF AMERICA                                                                                    PLAINTIFF

v.

SIRRON ANTHONY MORALEZ                                                                               DEFENDANT

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court upon Defendant Sirron Moralez's ("Moralez") Motion to Suppress. [DN 45]. A suppression hearing was held on September 8, 2020. Moralez has filed a supplement to his motion to suppress. [DN 51]. The government has responded. [DN 54]. As such, this matter is ripe for adjudication. For the reasons that follow, **IT IS HEREBY ORDERED** that Moralez's Motion to Suppress [DN 45] is **DENIED**.

**I. Background**

On June 11, 2019, Trooper Williams witnessed a vehicle traveling eastbound on I-24 at approximately 84 miles per hour. [Supp. Hrg. DN 48 (Williams) 4: ¶¶ 15-19]. Williams stopped the vehicle, approached the passenger side, and asked for Moralez's driver's license. [*Id.* at 5: ¶¶ 16-19]. Moralez informed Williams that the vehicle was a rental car, so Williams asked for the rental papers. [*Id.* at 5: ¶¶ 20-21]. Moralez began looking for the papers in the center console. [*Id.* at 5: ¶ 22-23]. As Moralez was looking in the center console, Williams saw a brown box with the letters "THC" on it. [*Id.* at 6: ¶¶ 2-5].

Williams then had Moralez come back to his vehicle to begin the enforcement action. [*Id.* at 7: ¶¶ 14-16]. When Moralez got out of the vehicle Williams saw a small glass vial with white powder in it in the seat Moralez was sitting. [*Id.* at 10: ¶ 25; 11: ¶¶ 1-6]. After Post 1 radio dispatch ran Moralez's driver's license, Williams asked Moralez for consent to search his car. [*Id.* at 12: ¶¶

4-7]. Moralez withheld consent and Williams informed Moralez that his vehicle would be searched due to the THC box. [*Id.* at ¶¶ 8-9]. Williams, along with Trooper Dodd, found a large amount of methamphetamine, a glass vial with cocaine inside, and a THC vape pen. Moralez now seeks to suppress the recovered evidence.

## II. Legal Standard

Searches and seizures conducted without a warrant issued by a judge or magistrate are per se unreasonable under the Fourth Amendment unless a specifically established exception applies. *Katz v. United States*, 389 U.S. 347, 357 (1967). When searches are conducted without a warrant, the government has the burden of showing that an exception applies. *Vale v. Louisiana*, 399 U.S. 30, 34 (1970). "The exclusionary rule prohibits the admission of evidence seized in searches and seizures that are deemed unreasonable under the Fourth Amendment, as well as derivative evidence acquired as a result of an unlawful search." *U.S. v. Kennedy*, 61 F.3d 494, 497 (6th Cir.1995) (citing *Wong Sun v. United States,* 371 U.S. 471, 484–85 (1963)). The government must prove by a preponderance that an exception to the exclusionary rule applies.

## III. Discussion

One of the exceptions to the exclusionary rule is the automobile exception. The automobile exception allows officers to conduct a warrantless search of a vehicle if there is probable cause to believe the vehicle contains evidence of a crime. *United States v. Lumpkin*, 159 F.3d 983, 986 (6th Cir. 1998). "Probable cause exists when there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Smith v. Thornburg,* 136 F. 3d 1070, 1073 (6th Cir. 1998) (internal quotations omitted). Determination of probable cause must be judged by a totality of the circumstances. *Illinois v. Gates*, 462 U.S. 213, 230 (1983). "In determining whether probable cause exists, we may not look to events that occurred after the search or to the subjective

intent of the officers; instead, we look to the objective facts known to the officers at the time of the search." *Thornburg,* 136 F. 3d at 1075.  Here, the government argues the automobile exception applies. Moralez argues Williams and Trooper Dodd conducted the search based on Williams's mere suspicion that the box with the letters "THC" contained contraband. The Court agrees with the government.

At the time Williams initiated the search of Moralez's vehicle, he observed a brown box with the letters "THC" on it and a glass vial containing a white powder. During the hearing, Williams testified that he told Moralez he was going to search his car "because of the THC box that [he] saw." [*Id.*] Williams never mentioned the glass vial to Moralez. Williams stated he never mentioned the glass vial because he "didin't want him to take off running or anything like that." [*Id.* at 11: ¶¶ 2-4]. Williams further testified that he knew he was "already good" to search the vehicle because of the box. [*Id.* at ¶¶ 7-8]. Although Williams never mentioned the glass vial, in his report, he stated, "I had probable cause to search the vehicle due to the THC box I observed and the glass vial on the seat". [*Id.* at 18: ¶¶ 6-7].

If Williams had only observed the brown box, probable cause may be debatable. However, that is not the present situation. Here, when considering the totality of the circumstances, Williams had probable cause. Williams stated he has seen brown boxes with "THC" written on them "thousands of times" and they "normally hold what's called a marijuana oil vape container." [*Id.* at 6: ¶¶ 3-5; 11-15]. He witnessed a small vial containing a white powder. After observing both items he witnessed Moralez's behavior. Williams observed Moralez exhibiting nervous behavior. [*Id.* at 10: ¶ 3]. Moralez told Williams he was on his way to Nashville to visit friends for a couple of days. [*Id.* at 8: ¶¶ 18-24]. When Williams asked Moralez if he knew how to get to Nashville,

Moralez responded by say "I don't know. I have to call when I get there." [*Id.* at ¶ 25; 9: ¶¶ 1-2]. This was a familiar story to Williams.

> "This is something that I've heard numerous times, where couriers are having to -- they don't know the address to where they're going, because if they do get stopped in between, they don't have that information to divulge that this is where the narcotics are going. We just have to call. When we get to a certain location, we call. Then either somebody will meet them or they'll give them a different address to go to, so on and so forth."

[*Id.* at 9: ¶¶ 3-10]. When the Court views all of these circumstances, Williams had probable cause to believe the vehicle contained evidence of a crime.

In *United States v. Baxter,* officer Zianno stopped a truck with expired tags driven by Baxter. 1995 WL 641316, *1 (Sixth Cir. Oct. 31, 1995). Baxter could not prove insurance and registration so Zianno decided to impound the vehicle. *Id.* Zianno allowed Baxter to remove his possessions from the vehicle. *Id.* As Baxter was removing his belongings, "a small brown tinted glass vial containing a white powdered substance [fell] out of the jacket and onto the seat." *Id.* After Zianno placed Baxter under arrest, he searched the vehicle and found "a gun with four rounds of live ammunition, a marijuana cigarette, and money in the jacket; a vial of cocaine in the truck; and more money, a "Dr. Pepper" can with a false bottom containing several bags of cocaine, a kitchen strainer, a bottle containing a cutting agent, a pager, as well as other drug paraphernalia, in the duffel bag." *Id.* Baxter filed a motion to suppress in the district court and the Magistrate Judge found the search of the truck was permissible under the automobile exception. *Id.* The Magistrate Judge specifically found "Zianno's inadvertent discovery of the cocaine vial gave him ample cause to believe the vehicle contained drugs." *Id.* The district court adopted the Magistrate Judge's findings. The Sixth Circuit affirmed this finding. *Id.* at 3.

Here, the glass vial alone gave Williams probable cause. When all other circumstances are considered, probable cause is clear. Williams's decision not to ask Trooper Dodd to use his K-9

Dax to do an open-air sniff does not negate the probable cause Williams had. Although a positive alert from Dax would have established probable cause, it was not required. Therefore, Moralez's motion must be denied.

### IV. Conclusion

For the above stated reasons, **IT IS HEREBY ORDERED** that Moralez's Motion to Suppress [DN 45] is **DENIED**.

**IT IS SO ORDERED.**

Thomas B. Russell, Senior Judge
United States District Court

November 4, 2020

cc: counsel